IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

RICHARD A. HOEFT,

                Petitioner,

    v.

JOHN CLARK, Warden,
Flambeau Correctional Center,

                Respondent.

REPORT AND
RECOMMENDATION

08-cv-537-bbc

---

## REPORT

Before the court for report and recommendation is the petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 brought by Richard A. Hoeft, who currently is serving a term of extended supervision as a result of his December 2004 conviction in the Circuit Court for Ashland County on three counts of burglary.  Hoeft raises a number of claims in support of his petition: the trial court erroneously denied his motion to suppress his confession (claims 1-3); trial counsel was ineffective for a variety of reasons (claims 4-13 and 15); and Hoeft is actually innocent (claim 14).

As discussed below, petitioner has procedurally defaulted his actual innocence claim and most of his ineffective assistance of counsel claims (claims 5 and 10-15) because he failed to properly present them in the state courts and has not shown that he meets one of the exceptions to that rule.  With respect to petitioner's remaining claims (1-4 and 6-9), the state courts did not unreasonably apply clearly established federal law, they did not make unreasonable determinations of fact.  Accordingly, I am recommending that the court deny the petition.

The following facts are drawn from the state court record:

FACTS

On July 19, 2003, while petitioner was incarcerated in the Douglas County Jail, a Bayfield County deputy sheriff named Thomas M. Renz interviewed him about a string of burglaries in Bayfield County.  Deputy Renz read petitioner his *Miranda* rights and petitioner signed a *Miranda* waiver form that included the warning that anything petitioner said could be used against him in court.  Petitioner agreed to go with Deputy Renz in his squad car to look at the properties that had been burglarized.  Deputy Renz provided petitioner with food and drink during the twelve-hour period that they were together.

On July 22, 2003, Ashland County deputy sheriffs Bruce Joanis and Nathaniel Delegan contacted petitioner at the Douglas County Jail about several burglaries that they were investigating in Ashland County.  Before the deputies questioned petitioner, they read him his *Miranda* rights and petitioner signed a waiver form that included the warning that anything petitioner said could be used against him in court.  No matters of significance were discussed before petitioner was given *Miranda* warnings.

Petitioner agreed to accompany the deputies to show them where the burglaries had taken place.  Petitioner was with the deputies for nine hours, directing the tour.  The deputies described the atmosphere as friendly and petitioner as cooperative.   When they returned to Superior, they stopped at a restaurant for a meal.  After he ate, petitioner signed a statement written by Deputy Delegan in which petitioner confessed to a number or burglaries in Ashland County.

 Petitioner was charged in Ashland County Circuit Court with sixteen counts of burglary and criminal damage to property as a repeater.  Petitioner represented himself at the initial

2

appearance on October 11, 2004, at the adjourned initial appearance on October 18, 2004 and at the preliminary hearing on October 26, 2004. Attorney Sam Filippo was appointed as stand-by counsel for petitioner on October 26, 2004 and became petitioner's full counsel during the November 9, 2004 hearing on petitioner's *pro se* motion to suppress his confession.

## I.  *Miranda-Goodchild* Hearing

At the November 9, 2004 suppression hearing, Deputy Renz confirmed that before asking petitioner any questions at the Douglas County jail on July 19, 2003, he had read petitioner his *Miranda* rights and had him sign a waiver form. Renz stated that he did not make any threats or promises to petitioner but he admitted telling petitioner that if he cooperated, he would put in a good word with the district attorney. Renz testified that he provided petitioner with food and water and allowed him to use the bathroom during their 12 hours together.

Deputy Joanis testified that prior to talking with petitioner on July 22, 2003, he had looked through the computer for unsolved burglaries in Ashland County. Deputy Joanis testified that on July 22, 2003, Deputy Joanis stated that when he first got to the jail with Deputy Delegan, Delegan left for about 10 minutes in order to get paperwork from the car. Although petitioner had not yet been advised of his rights under *Miranda*, Joanis denied questioning petitioner during this short period. At most, he told petitioner that he wanted to speak with him about burglaries in Ashland County. Deputy Joanis then read petitioner his *Miranda* rights, which petitioner voluntarily waived before answering questions. Petitioner then accompanied Deputies Joanis and Delegan for a nine-hour tour of  burglary sites in Ashland and Sawyer Counties.

Deputy Joanis testified that he told petitioner that he would let the district attorney know that petitioner had cooperated with law enforcement.  Joanis testified that he provided petitioner with a beverage while on the road and that they stopped at Wendy's for food after finishing the tour.  Petitioner rode in the squad car in shackles.  Joanis denied abusing or threatening petitioner in any manner.  He testified that petitioner never invoked his right to counsel or to remain silent.

Petitioner testified to his version of the events that took place on July 19 and 22.  He stated that Renz had read him his *Miranda* warnings.  Petitioner testified that he asked to speak to a public defender but Renz told him it was Saturday.  Petitioner testified that on July 22, he was alone in the interview room with Joanis for about 10 minutes, and during this time, Joanis talked to him about items reported stolen in Ashland County without first reading him his *Miranda* warnings.  Petitioner testified that after Delegan returned to the room, Joanis informed him of his rights under *Miranda*:

> He didn't read them off the paper.  . . . he said you got them . . . He just read them to me, you know, like they do on TV, I guess.  "You have the right to remain silent."  "You have the right to an attorney and if you can't afford an attorney you can have an attorney appointed."

> Dkt. 12, Exh. BB at 44-45.

Petitioner admitted that he had signed a written waiver of his *Miranda* rights, but claimed that he thought the form meant only that he understood his rights.  According to petitioner, he mentioned getting a lawyer but Deputy Joanis never asked whether he wanted one.

Petitioner testified that during the interview, Deputy Joanis told him that given this was petitioner's "first time," he could get petitioner a good deal–"a little bit of jail time"–and that

4

petitioner's probation officer, Vicki Arndt, had agreed and had spoken about an alternative to revocation of his current probation.  Deputy Joanis also told petitioner that another person had recently received less than a year in jail for a string of burglaries.  The interview ended after noon when petitioner had a court  appearance *via* video in another case.  After that appearance, petitioner agreed to show the officers the location of a chainsaw that he saw someone named Lehman dump.  Petitioner testified that he had nothing to do with the crime and that someone named Lehman had set him up.

Petitioner testified that during the July 22 trip, the officers yelled at him, refused to take him back to the jail and threatened to "rip [his] mom's house apart" to look for stolen goods. As a result, petitioner agreed to show the officers the location of other stolen property that he knew about.  He stated that Delegan started writing up the statement before they arrived at the Wendy's.  Petitioner stated that although it was dark and he did not have his glasses, he read and signed the statement.  Petitioner admitted that the deputies did not prevent him from going to the bathroom and they got him food, although they waited a while to do that.

The trial court determined that the officers' testimony was more credible than petitioner's, pointing out that petitioner would have had the opportunity to complain about coercion either to the jailers or to the judge during petitioner's video court appearance that day. Because the trial court concluded that the officers had complied with *Miranda* and that petitioner's confession was voluntary, it denied the motion to suppress.

## II. Pretrial Representation and Plea

By letter dated December 3, 2004, petitioner informed Filippo that he had requested new counsel.  After Filippo confirmed that the State Public Defender's office would substitute Attorney Carol Conklin for Filippo, Filippo stopped working on petitioner's case.  At a telephone hearing held on December 14, 2004, petitioner asked the trial court to substitute Conklin for Filippo.  Conklin indicated that she would need a continuance of the trial date scheduled for December 22 and 23.  The trial court denied petitioner's motion for substitution of counsel because petitioner had made a speedy trial demand.

On December 15, Filippo attempted to meet with petitioner at the jail but was turned away because petitioner was meeting with his family.  Petitioner wrote Filippo a letter stating that he wished to terminate Filippo's representation.  Filippo filed a motion to withdraw.  On December 20, 2004, before the court ruled on the motion, the parties informed the court that a plea agreement had been reached, and petitioner withdrew his request for a new lawyer.

On December 21, 2004, petitioner entered no contest pleas to three counts of burglary as a repeater.  Counts 4 through 16 were read in and dismissed.  At the plea hearing, the court informed petitioner on the record that the elements of burglary include the following:

> First, you intentionally entered the building; second, you entered the building without the consent of the person in lawful possession; third, you knew that your entry was without such consent; fourth, you entered the building with the intent to steal, that is you had the mental purpose to take and carry away movable property of another without consent and with intent to deprive the owner permanently of possession of such property.

Petitioner told the judge that he understood the elements of each crime, he was satisfied with Filippo's representation and he had no questions for the court.

6

At the sentencing hearing on April 12, 2005, petitioner was represented by Attorney Carol Conklin.   Petitioner was sentenced to three concurrent sentences of two years' confinement and four years' extended supervision consecutive to any other existing sentence.

## III.  First Postconviction Motion

### A.  Trial Court Hearing and Decision

Petitioner appealed his conviction *pro se,* claiming first that the trial court should have suppressed his confession because it was involuntary and taken in violation of *Miranda* and second that his lawyer had been ineffective.  On March 14 and 16, 2006, the trial court held a hearing

At the hearing, Deputy Delegan testified that on July 22, 2003, he and Joanis stopped questioning petitioner for nine minutes while petitioner went to a court appearance.  Neither officer re-read petitioner his *Miranda* rights before resuming questioning.  In the statement that Deputy Delegan wrote out for petitioner to sign, Delegan wrote only what petitioner had told them.  The deputies took petitioner to Wendy's to eat at 9 p.m.  Both deputies testified that during their seven hours of touring (from 2 p.m. to 9 p.m.), petitioner never complained that he was uncomfortable, hungry, thirsty or had to go to the bathroom.  The deputies testified that they had a list of burglarized locations and missing items, and that petitioner remembered some of the matching details but not all of them.  Deputy Joanis stated that he used the list to refresh petitioner's memory as to some of the burglaries, but that petitioner also was volunteering information and directing him where to drive.

At the hearing, Attorney Filippo testified that he did not perform any work on petitioner's case between November 19 and December 13, 2004 because he was under the impression that he no longer was serving as petitioner's attorney.  Filippo explained that if were to have prepared for trial, then he would have interviewed witnesses, gone over the police reports in detail possibly visited the crime scenes and prepared a trial notebook.  Filippo did not remember if he reviewed the police reports in petitioner's case before November 19.  Filippo testified that he had not moved for disclosure of the identities of confidential informants regarding their report of petitioner's actions on June 10 and 11, 2003 because Filippo concluded that this information was irrelevant to petitioner's defense.

Filippo testified that the evidence against petitioner was very strong on at least the first three counts because petitioner had confessed and the court had denied petitioner's motion to suppress this confession.  He had recommended that petitioner plead guilty in part because of this circumstance.  When asked by petitioner whether petition had been dead-set on going to trial, Filippo responded "Ya, you were.  Ya.  You were at first.  I was surprised that you were willing to accept the plea bargain at the last minute or the eleventh hour, so to speak."

The trial court denied petitioner's motion for postconviction relief.  The court found that petitioner had not rebutted the deputies' credible testimony about the confession.  The court found that because petitioner had been *Mirandized*, had not asked for counsel, and never had asked the deputies to stop, the officers did not have to *re-Mirandize* petitioner pursuant to *Michigan v. Mosley*, 423 U.S. 96 (1975), after the 9 minute break in questioning.  Citing *Agnello v.* , 269 Wis. 2d 260 (Ct. App. 2003), the trial court determined that the length of the 12-hour interrogation had been driven by how much information petitioner had been willing to provide.

8

The court further found that petitioner had not been deprived food, drink or bathroom breaks during the interrogation.

With respect to petitioner's ineffective assistance of counsel claim against Filippo, the court determined that there was no evidence that any of the alleged deficiencies had had any effect of petitioner's decision to plead no contest, or that petitioner's plea was not voluntary. Petitioner appealed.

### B.  Court of Appeals Decision

On February 6, 2007, the Wisconsin Court of Appeals affirmed petitioner's conviction and the trial court's order denying postconviction relief.  The court noted that petitioner's argument that the deputies had not complied with *Miranda* arose from petitioner's version of events, which the trial court had rejected.  The appellate court also pointed out that petitioner had executed written waivers, that nothing in the record indicated that any matters of significance were discussed in the ten minutes prior to petitioner receiving the warning from Joanis, and the deputies were not required to repeat the *Miranda* warnings after the brief break in questioning for petitioner's court appearance.

The appellate court rejected petitioner's claim that his confession was involuntary, noting that the nine hours of interrogation consisted of petitioner driving with the officers through several counties pointing out burglary sites and describing his crimes.  The court noted that the trial court had rejected petitioner's report of a hostile and coercive atmosphere.  The appellate court determined that the length of this meeting had depended on petitioner's guided tour, and that petitioner had failed to adduce evidence that the deputies had worn down his resistance by

conducting an excessively long interview.  The court noted that petitioner never testified that the absence of food or drink or the need to use the bathroom influenced his decision to sign the statement.

The court noted that although the deputies had evidence of petitioner's involvement in numerous burglaries before they questioned him, this fact was irrelevant.  Under *Hoyt v. State*, 21 Wis. 2d 310, 316, 124 N.W.2d 47 (1963), when officers already have substantial evidence confirming a suspect's guilt before interrogating the suspect, the court must resolve any ambiguities about factors relevant to voluntariness in favor of inadmissibility of the confession.[1]  In petitioner's case, however, the appellate court found no ambiguities with respect tot he admissibility of petitioner's confession.  Citing *Colorado v. Connelly*, 479 U.S. 157, 167 (1986), the court of appeals found that the trial court's findings of fact and the officers' testimony disclosed no coercive or improper police conduct.

Finally, the appellate court found that petitioner had not shown that he was prejudiced by his attorney's alleged lack of preparation pursuant to the standard set forth in *Hill v. Lockhart*, 474 U.S. 52, 59 (1985) for cases involving pleas.  The court noted that petitioner had not even alleged that his no contest plea resulted from his attorney's lack of preparation.  The court held that the "strength of the State's case and the incentive of dismissing thirteen charges strongly suggests that Hoeft accepted the plea bargain for reasons entirely unrelated to his counsel's performance, a fact confirmed by his own statement during the plea colloquy."

---

[1]  The court's observation in *Hoyt* actually was much narrower and much more fact specific than implied by the appellate court in petitioner's case.  *See* 124 N.W.2d at 58-59, and it is easily distinguishable from petitioner's case on that basis.

### III.  Second § 974.06 Motion

Petitioner filed a second motion for § 974.06 relief, again alleging attorney ineffectiveness.  At a postconviction hearing held on September 7, 2007, petitioner testified that he did not raise his additional ineffective assistance of counsel claims in his prior motion because he had not read the police reports.  Petitioner raised the issue that the state recently had admitted that it mistakenly charged petitioner with burglary instead of theft on count one.

The trial court denied the motion because petitioner had not shown sufficient reason why the issues could not have been raised in his previous post-conviction motion.  *See State v. Escalona-Naranjo*, 185 Wis. 2d 168, 517 N.W.2d 157 (1994).  The court noted that there was no new evidence, and even if petitioner did not read the police reports, he could have obtained them through his counsel or while acting *pro se*.  Although the court acknowledged that the state had admitted its charging mistake after petitioner filed his first appeal, it found that petitioner had had access to all the information necessary to raise the issue on direct appeal.  The court also pointed out that because petitioner's sentences were concurrent on all three counts, dismissing count one would offer petitioner no benefit.

On November 2, 2007, the trial court held a hearing to consider petitioner's motion for reconsideration.  Petitioner argued that under *House v. Bell*, 547 U.S. 518 (2006), the *Escalona-Naranjo* procedural bar should not prevent him from raising a claim of actual innocence.  Not deciding whether *House* would apply in petitioner's state court action, the court found that petitioner could not establish actual innocence.  The court pointed out that even if the state's admission of a charging error was "new evidence," the totality of the evidence would not call petitioner's conviction into question.  The court noted that petitioner had confessed and any

11

evidence regarding a footprint or tire track not matching his would not be compelling.  Further, the court found that petitioner suffered no prejudice because his sentences on all three counts ran concurrently.

Petitioner appealed the trial court's decision.  On May 20, 2008, the court of appeals held that petitioner already had litigated his claim that his trial attorney was ineffective for failing to research the law.  The court found that his other ineffective assistance of counsel claims were barred under Wis. Stat. § 974.06 and *Escalona-Naranjo* because he had not set forth sufficient reasons for not raising those claims on direct appeal.  The appellate court rejected petitioner's attempt to invoke the actual innocence exception discussed in *House* for obtaining federal habeas review despite a state procedural bar.  The court noted that although the federal standard parallels the "sufficient reason" exception in *Escalona-Naranjo*, it does not override it. It also found that petitioner's case involved a claim of actual innocence following a guilty plea, whereas *House* involved new evidence of actual innocence after a jury trial.  The court reiterated view that petitioner had had significant incentive to accept an offer that dismissed thirteen charges for which the state had a strong case.


ANALYSIS

Petitioner raises 15 claims.  In the first three, he alleges that the trial court erred in denying his motion to suppress because:

(1) The interrogation was too long to be voluntary;

(2) The police did not give him proper *Miranda* warnings; and

(3) His statements are the result of promises and threats.

12

In claim (14), petitioner alleges that he is actually innocent.  In the rest, petitioner claims that his trial attorney was ineffective because:

(4) He failed to do any work on his case in preparation for trial;

(5) he never met with petitioner, effectively denying petitioner counsel;

(6) He performed no investigation of the charges against petitioner;

(7) He failed to subpoena witnesses;

(8) He failed to read the police reports, which showed that the burglar wore larger shoes than petitioner, the boltcutters described in the reports were in petitioner's truck out of town during the times of the burglaries; and other inconsistencies.

(9) He failed to file any motions to obtain the identities of confidential informants who may have had exculpatory information;

(10) He abandoned petitioner because he incorrectly assumed that he was no longer counsel of record;

(11) He recommended that petitioner plead no contest when there was insufficient evidence to convict him;

(12) He recommended that he plead no contest to count one when the facts did not support a conviction for burglary;

(13) He failed to impeach Joanis;

Claim 15:  recommended that petitioner plead no contest when the only evidence against him was confession, which was insufficient to convict him.

Petitioner raised the content of claims 1-4 and 6-9 on direct appeal.  In a later postconviction motion, he raised claims 11, 12 and 13.  Petitioner never raised claims 5, 10, 14 or 15 in the state courts.  Respondent asserts that petitioner procedurally defaulted claims 5 and 10-15 and challenges the remaining claims on the merits.

## I.  Procedural Default

Before he is entitled to a federal ruling on his claims, a petitioner must (1) exhaust all remedies available in the state courts; and (2) fairly present any federal claims in state court first. *Lemons v. O'Sullivan*, 54 F.3d 357 (7th Cir. 1995).  A petitioner has exhausted his state court remedies where he has "no further available means for pursuing a review of one's conviction in state court." *Wallace v. Duckworth*, 778 F.2d 1215, 1219 (7th Cir. 1985).

However, exhaustion entails more than merely shepherding one's claims through the appropriate paths of state court review; along the way the petitioner also must present his federal claims fully and fairly to the state courts. *Chambers v. McCaughtry*, 264 F.3d 732, 737 (7th Cir. 2001)*; see also O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999) ("[T]he exhaustion doctrine is designed to give the state courts a full and fair opportunity to resolve federal constitutional claims before those claims are presented to the federal courts.").  That is, "[a] petitioner must provide the state courts with a fair opportunity to apply constitutional principles and correct any constitutional error committed by the trial court." *Bocian v. Godinez*, 101 F.3d 465, 469 (7th Cir. 1996) (quotation omitted).  In order to meet the "fair presentment" precondition to exhaustion, "[t]he petitioner must have placed both the operative facts and the controlling legal principles before the state courts." *Chambers,* 264 F.3d at 737-38 (internal citations omitted). A petitioner's failure to fairly present his federal claims to the state courts is a procedural default that bars this court from considering the merits of the claims.  *Id*.

A petitioner also may procedurally default a federal claim by failing to meet a *state* procedural requirement. *Moore v. Bryant*, 295 F.3d 771, 774 (7th Cir. 2002).  "A federal court will not review a question of federal law decided by a state court if the decision of the state court

rests on a state procedural ground that is independent of the federal question and adequate to support the judgment." *Id*. (citations omitted).  In assessing whether a state court ruling rests upon an "independent and adequate" determination of state law, the federal court must refer to the decision of the last state court to have ruled on the merits. *Page v. Frank*, 343 F.3d 901, 905 (7th Cir. 2003).  A state ground is deemed "independent" for this purpose "only if the state court actually relied on a state rule sufficient to justify its decision." *Prihoda v. McCaughtry*, 910 F.2d 1379, 1382 (7th Cir. 1990).  A state ground is considered "adequate" only if the state court applies the rule "in a consistent and principled way." *Id*. at 1383.  The adequacy of the state ground is a question of federal law.  *Lee v. Kemna*, 534 U.S. 362, 375 (2002).

### A. *Escalona-Naranjo* bar

The state contends that petitioner procedurally defaulted claims 5, 10, 14 and 15 because he never presented them to the state courts and no longer can do so under *Escalona-Naranjo*.  The state also cl petitioner procedurally defaulted claims 11-13 because the state court of appeals found that under *Escalona-Naranjo*, petitioner could not bring them because he did not have a sufficient reason for not raising them in his first postconviction motion.  Petitioner does not dispute that he failed to raise claims 5, 10, 14 and 15 in state court.  With respect to claims 11-13, he argues that because § 974.06 was derived directly from the federal habeas statute, 28 U.S.C. § 2255, he can bring a successive collateral attack asserting ineffective assistance of counsel.  *See Massaro v. United States*, 538 U.S. 500 (2003).

Essentially, petitioner argues that the rule announced in *Massaro* preempts the Wisconsin Supreme Court's decision in *Escalona-Naranjo*.  The Court of Appeals for the Seventh Circuit has

rejected this argument, determining that *Massaro* involved a procedural issue and is not legally binding on states. *Gomez v. Jaimet*, 350 F.3d 673, 678 (7th Cir. 2003) (citing *Massaro*, 538 U.S. at 504). While state law on waiver may be in conflict with the federal court's own procedural default rule, it continues to operate as an adequate and independent state ground for barring federal habeas review of an ineffective assistance of counsel claim. *Id.* As an independent governing body, a state has the power to establish, "curtail or even abolish collateral review as it pleases." *Liegakos v. Cooke*, 106 F.3d 1381, 1385 (7th Cir. 1997).

This court must defer to the state court's decision as long as it relied on an independent and adequate state law ground. In this case, the court of appeals clearly and expressly relied on *Escalona-Naranjo* to bar petitioner's claims. Federal courts recognize the *Escalona-Naranjo* procedural bar to be an adequate state ground. *E.g., Perry v. McCaughtry*, 308 F.3d 682, 690 (7th Cir. 2002); *Hudson v. Grams*, 2008 WL 4498814, *4 (W.D. Wis. Oct. 3, 2008). Accordingly, I find that petitioner has procedurally defaulted claims 5 and 10-15.

Once a petitioner has procedurally defaulted a claim, a federal court cannot reach the merits of that claim unless the petitioner demonstrates (1) cause for the default and actual prejudice from failing to raise the claim as required, or (2) that enforcing the default would lead to a "fundamental miscarriage of justice." *Steward v. Gilmore*, 80 F .3d 1205, 1211-12 (7th Cir. 1996) (quoting *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). Petitioner has not explained why he failed to bring his claims earlier. However, as he did in the state court of appeals, he argues that enforcing the procedural default will result in a fundamental miscarriage of justice because he is actually innocent.

16

**B.  Miscarriage of justice exception**

The Supreme Court recognized the miscarriage of justice exception to provide a gateway to otherwise defaulted claims where there is a need to correct "a fundamentally unjust incarceration."  *House*, 547 at 536 (2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 495 (1986)).  This exception is reserved for extraordinary cases and is subject to a stringent standard.  *Id.* at 536-37; *Schlup v. Delo*, 513 U.S. 298, 327 (1990).  "Petitioner's burden at the gateway stage is to demonstrate that more likely than not, in light of the new evidence, no reasonable juror would find him guilty beyond a reasonable doubt."  *House*, 547 U.S. at 538 (citing standard announced in *Schlup*, 513 U.S. at 327).  The new evidence must be reliable, such as "exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence."  *Schlup*, 513 U.S. at 324.

Petitioner alleges that he could not have been found guilty on count 1 because the state wrongly charged him with a felony (burglary) instead of a misdemeanor (theft).  He contends that he is innocent of the conduct alleged in counts 2 and 3 because his confession was not corroborated by the following evidence:

- Petitioner's shoe size does not match the shoe print found at the scenes of several of the burglaries.

- The police had to tell petitioner the locations of the burglaries, what was taken and the method of entry.

- Confidential informants put petitioner in a different part of the state during the period that the burglaries were committed.

- Although Lehman told police that he gave petitioner all of the monetary proceeds from the burglaries, petitioner only had $9 on him when he was arrested.

- During the time in question, petitioner's boltcutters were in his truck, which was parked over 50 miles from Ashland County.

- Petitioner could not have lifted a cable up and driven underneath by himself, as alleged by Deputy Joanis in a few of the burglaries.

- There was evidence of an "aggressive" truck tire track at one crime scene and petitioner's truck tire treads are not aggressive.

None of this evidence is newly discovered because it either was contained in the police reports or came to light prior to petitioner's entry of a plea. In his second postconviction motion, petitioner asserted that neither his attorney nor he read the police reports. However, as the trial court reasonably determined, they were available and petitioner could have obtained them while acting *pro se* during the several weeks before he entered his plea. Further, petitioner was represented by counsel at the plea hearing and indicated that he was satisfied with that representation.

Even though the state did not admit its charging error until after petitioner filed his first appeal, the trial court reasonably concluded that petitioner had access to all of the information necessary to raise that issue on direct appeal. The criminal complaint in petitioner's case indicates that with respect to count 1, petitioner admitted to Joanis that he took four bicycles from "underneath the rafters of [the] cabin" located in Chippewa, Wisconsin. Dkt. 12, Exh. U at R-Ap. 108. At the plea hearing, the trial court made clear that an essential element of the crime of burglary is entry *into* a building without consent. Therefore, petitioner should have been aware at the time he pleaded no contest that the prosecutor made a charging error, even though respondent did not confirm that fact until after petitioner's first appeal.

But even if everyone had realized at the time that a charge picked to be part of the plea deal was unsound, petitioner would have gained nothing. The state just would have substituted a different charge, and petitioner would have had all of the same incentives to accept the

amended offer.    Additionally, petitioner's sentences were concurrent on all three counts; therefore, the sentence he actually served would not have changed.

As the state court noted, even if the state's admission of the charging error could be considered "new evidence," petitioner cannot show that he is actually innocent.  Respondent points out that petitioner's claims of actual innocence are at odds with his no contest plea. Typically, a voluntary and intelligent plea may not be collaterally attacked.  *Mabry v. Johnson*, 467 U.S. 504, 508 (1984).  Although petitioner argues (in his defaulted claims) that his lawyer was ineffective, petitioner essentially is challenging the voluntariness of his plea because he alleges that his counsel did not properly inform him of the charges against him.  *See Brady v. U.S.*, 397 U.S. 742, 755 (1970) (guilty plea involuntary if induced by threats, misrepresentation or improper promises; was advised by competent counsel, was in control of his mental faculties, and "was made aware of the nature of the charge against him."  *Id.* at 756-57. ).

In *Bousley v. United States*, 523 U.S. 614 (1998), the Supreme Court addressed a situation in which petitioner sought to invoke the actual innocence exception even though he had pled guilty.   The Court held that petitioner could obtain collateral review of his procedurally defaulted claim that his guilty plea was unintelligent if he could "establish that the constitutional error in his plea colloquy has probably resulted in the conviction of one who is actually innocent."  *Id.* at 623-24 .  However, the Court emphasized that actual innocence means factual innocence, not mere legal insufficiency:

> In other words, the Government is not limited to the existing record to rebut any showing that petitioner might make.  Rather, on remand, the Government should be permitted to present any admissible evidence of petitioner's guilt even if that evidence was not presented during petitioner's plea colloquy . . .  In cases where the Government has forgone

19

> more serious charges in the course of plea bargaining, petitioner's showing
> of actual innocence must also extend to those charges.

*Id.* (citing *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992)).

In this case, petitioner faced 14 counts of burglary and two counts of criminal damage to property. He pleaded guilty to only three counts of burglary. Even if petitioner is innocent of the burglary charged in Count 1 because he did not enter the dwelling in question, there is substantial evidence of petitioner's guilt on Counts 2. 3 and the other 13 counts that the government dropped as part of the plea agreement. Petitioner voluntarily confessed (as discussed below) to each of these crimes and his confession is corroborated by crime scene evidence, victim statements, police statements and a coconspirator statement. Petitioner picks away at the validity of this evidence, arguing that it is unreliable or contradicted by other evidence. This tactic, however, is no more than a challenge the sufficiency of the evidence. It does not establish that petitioner probably is actually innocent.

In dismissing petitioner's ineffective assistance claims and rejecting his attempt to overcome the *Escalona-Naranjo* bar, the state courts considered and found unpersuasive many of petitioner's evidentiary arguments. Petitioner has not shown that the state court determinations were unreasonable or in error. *See* 28 U.S.C. § 2254(d)-(e). Even accepting, *arguendo*, all of petitioner's challenges to the evidence, this would not establish that petitioner did not commit the charged crimes. Accordingly, because petitioner procedurally defaulted claims 5 and 10-15 and has not shown that he meets one of the rule's exceptions, I am recommending that these claims be denied.

20

## II. Merits

### A. Legal Standard

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996, federal courts may grant a state prisoner habeas relief only if the state court's adjudication of the claim

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). To grant habeas relief under the "contrary to" clause, a federal court must find that the state court reached a result opposite to that reached by the Supreme Court on materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405 (2000); *Jackson v. Miller*, 260 F.3d 769, 774 (7th Cir. 2001). To obtain relief under the "unreasonable application" clause, a habeas petitioner must show that the state court's decision unreasonably extended a clearly established Supreme Court precedent to a context where it should not have applied or unreasonably refused to extend such precedent to a context where it should have applied. *Jackson*, 260 F.3d at 774. The state court's factual findings are presumed correct unless the petitioner comes forth with clear and convincing evidence showing that the findings were wrong. 28 U.S.C. § 2254(e)(1); *Miller-El v. Cockrell*, 537 U.S. 322, 348 (2003).

### B. Confession

#### (1) Voluntariness

In claims (1) and (3), petitioner argues that the trial court should have suppressed his confession as involuntary. A confession is voluntary if, in the totality of circumstances, it is the

product of a rational intellect and free will and not the result of physical abuse, psychological intimidation or deceptive interrogation tactics that have overcome the defendant's free will. *United States v. Ross*, 510 F.3d 702, 710 (7th Cir. 2007); *see also Schneckloth v. Bustamonte*, 412 U.S. 218, 225 (1973).   Relevant factors include the defendant's age, intelligence, education, mental state, the administration of *Miranda* rights, the duration and environment of the interrogation and the conduct of law enforcement. *Ross*, 510 F.3d at 710.   Coercive police activity is a necessary predicate to a finding of involuntariness. *United States v. Gillaum*, 372 F.3d 848, 856-57 (7th Cir. 2004) (citing *Connelly*, 479 U.S. at 167).   Petitioner does not claim that he was not old enough, smart enough or savvy enough to provide a voluntary statement. Instead, petitioner asserts that the interview was too long, he didn't get fed enough, he needed mor breaks, and he finally signed the statement written confession because the police promised to get him a good deal if he did and threatened to rip his mother's house apart if he did not.

To evaluate these assertions, the trial court took testimony from petitioner and the deputies on two different occasions.   The court of appeals reviewed the evidence and the trial court's findings of fact.   It concluded that the deputies did not act improperly and did not erode petitioner's resistance by conducting an excessively long interview.   The appellate court found that the length of the interrogation was due to petitioner driving with the deputies through several counties pointing out burglary sites and describing his crimes.   Further, petitioner admitted that the alleged absence of food or drink or the need to use the bathroom did not influence his decision to sign the statement.

With respect to the officers' alleged promises and threats, the court of appeals found petitioner's account not credible.   The deputies testified that they told petitioner only that they

would let the prosecutor know that petitioner had cooperated.  They denied making any other promises or threatening to rip apart his mother's house in a search.  Honest promises cannot be a basis to suppress admissions, *United States v. Charles*, 476 F.3d 492, 497 (7th Cir. 2007), and police are not forbidden from playing on a suspect's anxieties, fears and uncertainties when attempting to pressure him into making a statement.  *United States v. Westbrook*, 125 F.3d 996, 1005-06 (7th Cir. 1997).  *United States v. Rutledge*, 900 F.2d 1127, 1131 (7th Cir. 1990).  Police cross the constitutional line, however, when they mislead a suspect or exploit his anxieties to the point that he is unable to make a rational decision about whether to confess.  *Westbrook*, 125 F.3d at 1006.  Apart from petitioner's own testimony, which the courts rejected, nothing in the record indicates that the officers crossed this line.

Because petitioner has not presented clear and convincing evidence that the state courts factual findings were wrong or that they reached a decision that is contrary to or an unreasonable application of clearly established federal law, claims (1) and (3) should be denied.

### (2)  *Miranda* warnings

In claim (2), petitioner alleges that the trial court should have suppressed his confession because the police failed to advise him verbally that anything he said could later be used against him.  *See Miranda*, 384 U.S. at 444.  The trial court found that petitioner's testimony to this effect was incredible; petitioner had executed written waivers that included all of the proper *Miranda* warnings; nothing in the record indicated that any matters of significance were discussed in the ten minutes prior to petitioner receiving the warning from Deputy Joanis; and the deputies were not required to repeat the *Miranda* warnings after the brief break in

23

questioning.  Petitioner has not adduced clear and convincing evidence that these findings were erroneous.

Petitioner argues that although the state had an opportunity to rebut his testimony at the suppression hearing, it failed to do so.  First, the state is not required to rebut testimony that the fact-finder deems incredible.  Apart from this, petitioner's suppression hearing testimony did not clearly establish that he actually had not received full *Miranda* warnings.  He testified that instead of reading the warning, Deputy Joanis recited it like the police do on television; petitioner then recited only a partial *Miranda* warning .  Petitioner did not actually state that he was not advised that any statement he made could later be used against him, and petitioner's attorneys never posed this particular question to the deputies.  Therefore, the court of appeals decision was not contrary to or an unreasonable application of clearly established federal law nor based on an unreasonable determination of the facts in light of the evidence presented in the state court proceedings.  Petitioner's second claim should be denied.


### C.  Ineffective Assistance of Counsel

In claims (6) through (9) petitioner contends that his lawyer was ineffective for not preparing for trial by investigating, subpoenaing witnesses, reading police reports and filing motions.  *Hill v. Lockhart*, 474 U.S. at 58 sets forth the standard for establishing ineffective assistance counsel claims in plea cases: a defendant must show that counsel's performance was deficient and that the deficient performance prejudiced him.  *Id*. at 58-59.  To establish prejudice, a defendant must show that there is a reasonable probability that absent counsel's errors, the defendant would not have pleaded guilty but would have gone to trial.  *Id*. at 59.

The court of appeals applied *Hill* to the facts in petitioner's case and found that there was no evidence that petitioner pleaded no contest to the three burglary counts because of his lawyer's alleged lack of preparation. The court concluded that the strength of the state's case and the incentive of having 13 charges dropped strongly suggested that petitioner had accepted the plea bargain for logical reasons independent of counsel's performance. Additionally, petitioner stated at the plea hearing that he was satisfied with his lawyer's representation of him. This is a reasonable application of *Hill* based on reasonable findings of fact.

Petitioner has not adduced any evidence that he would have chosen to go to trial if his attorney had prepped better. Petitioner points out that Filippo testified at the *Machner* hearing that petitioner was "dead set" on going to trial. Undoubtedly this was petitioner's position early on, but petitioner obviously got cold feet after more carefully considering the strength of the state's case and the generosity of the plea offer. Petitioner fails to explain how Filippo's lack of trial prep could have affected this decision. It was logical and reasonable for the court of appeals to conclude that petitioner failed to establish a causal link between his attorney's lack of preparation and his decision to accept the plea bargain. Therefore, I am recommending that claims (4), (6), (7) (8) and 99).

## RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the petition of Richard A. Hoeft for a writ of habeas corpus be DENIED.

Entered this 14th day of April, 2009.

BY THE COURT:

/s/

STEPHEN L. CROCKER
Magistrate Judge

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WISCONSIN
120 N. Henry Street, Rm. 540
Post Office Box 591
Madison, Wisconsin  53701

Chambers of                                                                                        Telephone
STEPHEN L. CROCKER                                                                      (608) 264-5153
U.S. Magistrate Judge

April, 2009

Richard Hoeft
P.O. Box 462
Park Falls, WI 54552

Rebecca Rapp St. John
Wisconsin Department of Justice
P.O. Box 7857
Madison, WI 53707-7857

Re:_____Hoeft v. Clark
      Case No. 08-c-537-bbc

Dear Mr. Hoeft and Attorney St. John:

The attached Report and Recommendation has been filed with the court by the United States Magistrate Judge.

The court will delay consideration of the Report in order to give the parties an opportunity to comment on the magistrate judge's recommendations.

In accordance with the provisions set forth in the memorandum of the Clerk of Court for this district which is also enclosed, objections to any portion of the report may be raised by either party on or before April 30, 2009, by filing a memorandum with the court with a copy to opposing counsel.

If no memorandum is received by April 30, 2009, the court will proceed to consider the magistrate judge's Report and Recommendation.

Sincerely,

/s/

Connie A. Korth
Secretary to Magistrate Judge Crocker

Enclosures
cc:    Honorable Barbara B. Crabb, District Judge

MEMORANDUM REGARDING REPORTS AND RECOMMENDATIONS

Pursuant to 28 U.S.C. § 636(b), the district judges of this court have designated the  full-time magistrate judge to submit to them proposed findings of fact and recommendations for disposition by the district judges of motions seeking:

(1) injunctive relief;

(2) judgment on the pleadings;

(3) summary judgment;

(4) to dismiss or quash an indictment or information;

(5) to suppress evidence in a criminal case;

(6) to dismiss or to permit maintenance of a class action;

(7) to dismiss for failure to state a claim upon which relief can be granted;

(8) to dismiss actions involuntarily; and

(9) applications for post-trial relief made by individuals convicted of criminal offenses.

Pursuant to § 636(b)(1)(B) and (C), the magistrate judge will conduct any necessary hearings and will file and serve a report and recommendation setting forth his proposed findings of fact and recommended disposition of each motion.

Any party may object to the magistrate judge's findings of fact and recommended disposition by filing and serving written objections not later than the date specified by the court in the report and recommendation.  Any written objection must identify specifically all proposed findings of fact and all proposed conclusions of law to which the party objects and must set forth

with particularity the bases for these objections.  An objecting party shall serve and file a copy of the transcript of those portions of any evidentiary hearing relevant to the proposed findings or conclusions to which that party is objection.  Upon a party's showing of good cause, the district judge or magistrate judge may extend the deadline for filing and serving objections.

After the time to object has passed, the clerk of court shall transmit to the district judge the magistrate judge's report and recommendation along with any objections to it.

The district judge shall review de novo those portions the report and recommendation to which a party objects.  The district judge, in his or her discretion, may review portions of the report and recommendation to which there is no objection.  The district judge may accept, reject or modify, in whole or in part, the magistrate judge's proposed findings and conclusions.  The district judge, in his or her discretion, may conduct a hearing, receive additional evidence, recall witnesses, recommit the matter to the magistrate judge, or make a determination based on the record developed before the magistrate judge.

**NOTE WELL: A party's failure to file timely, specific objections to the magistrate's proposed findings of fact and conclusions of law constitutes waiver of that party's right to appeal to the United States Court of Appeals.  *See United States v. Hall,* 462 F.3d 684, 688 (7th Cir. 2006).**